IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF RHODE ISLAND

DAN DIAMANT, Plaintiff

vs.  CA No. 17-548 JJM-PAS

UTGR, Inc. dba Twin River Casino
and John Does, various security personnel
employed by Twin River Casino, as well as
Joseph Anterni and Russell Enos, police officers
employed by the Town of Lincoln,
Rhode Island, and Detective Trooper Lawens
Fevrier, Rhode Island State Police, Defendants

## FIRST AMENDED COMPLAINT

### Introduction, Parties and Jurisdiction

1. This is a civil action for false imprisonment and violation of civil rights of the plaintiff, Dan Diamant, arising from Mr. Diamant's unlawful detention and search and seizure on or about July 2nd, 2016. This action seeks monetary damages pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution, and Article I, §§ 2, 5, 6, and 14 of the Rhode Island Constitution, Rhode Island General Laws § 10-7-1, et seq., and under the common law of the State of Rhode Island.

2. Prior to institution of the within action against the defendants employed by the Town of Lincoln, the plaintiffs complied with R.I. Gen. Laws § 45-15-5 and more than forty (40) days elapsed since the defendants made presentment of the claim without receiving just and due compensation from the defendants.

3. At all times material herein, the plaintiff, Dan Diamant, was a citizen of Israel, and was lawfully within the United States.

4. At all times material herein, UTGR, Inc., is and was a foreign corporation doing business within the State of Rhode Island under the name Twin River Casino ("Twin River").

5. At all times material herein, Twin River is and was a casino located in the Town of Lincoln, Providence County, State of Rhode Island. Twin River holds itself out as an entertainment venue offering games of chance, including blackjack, to the general public.

1

6. At all times material herein, Twin River routinely engages police officers from the Lincoln, Rhode Island police department as "detail" or security officers. Upon information and belief, the officers are paid from funds provided by Twin River. In essence, members of the Lincoln police department act as a private security arm of Twin River. Russell Enos and Jospeh Anterni are Lincoln police officers and are being sued in their official and individual capacities.

7. At all times material herein, Lawens Fevrier was and is a Trooper of the Rhode Island State Police, presently holds the rank of Corporal, and is assigned to the RISP detective division. Trooper Fevrier is being sued in his official and individual capacity.

8. The damages alleged herein are sufficient to invoke the jurisdiction of this court.

9. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, because plaintiff raises claims pursuant to 42 U.S.C. 1983 and the United States Constitution.

10. Supplemental jurisdiction over state law claims is conferred under 28 U.S.C. §1367.

11. Venue is proper under 28 U.S.C. §1391 because the events giving rise to this case occurred in Rhode Island.

**Factual Allegations**

12. On July 2nd, Mr. Diamant visited Twin River. He approached a blackjack table and began playing. Mr. Diamant changed tables a few times, and continued to play for approximately one hour.

13. At approximately 7 p.m., Mr. Diamant noticed that several people wearing security badges had approached the table. One of the men identified himself as a chief security officer ("chief security officer"), and asked Mr. Diamant to step away from the table to have a word, and to bring his chips with him.

14. Mr. Diamant collected his chips and complied. Once away from the table, the man told Mr. Diamant he needed to produce identification and to accompany the security officers to an "interview room."

15. Mr. Diamant did not wish to go to an interview room, and did not wish to produce identification. The chief security officer again insisted that Mr. Diamant produce ID.

2

16. Mr. Diamant was aware that he was surrounded by security guards, and that any exits he could see were blocked. He again insisted that he wished to leave the casino. The chief security officer again stated he needed to go to an interview room.

17. Mr. Diamant had not committed any crime, nor was he ever informed that he was suspected of having committed a crime.

18. After approximately 10 minutes, two uniformed Lincoln Police officers, Jospeh Anterni and Russell Enos, appeared. Mr. Diamant informed the officers that he did not wish to produce identification. He asked if he was under arrest or being detained. Officer Anterni told him that he was not free to leave.

19. Both the chief of security and the police officers told Mr. Diamant that because of his failure to produce identification, the state police had been summoned. They told Mr. Diamant that all could be avoided if he simply produced identification.

20. After several minutes, the chief of security suggested that Mr. Diamant cash in his chips. The chief of security and a Lincoln Police officer accompanied Mr. Diamant to a cashier, where he was permitted to cash in his chips. At no time while at the cashier was Mr. Diamant required to produce identification in order to obtain money from the cashier.

21. After detaining Mr. Diamant for several more minutes, the chief of security told Mr. Diamant that he could leave. Mr. Diamant began to walk to an exit, still accompanied by a security officer.

22. Upon reaching the exit, the security officer stopped Mr. Diamant, and told him that there had been a change, and that he had to remain on the premises. The officer indicated that the State Police had asked to have Mr. Diamant detained.

23. Left with no choice, Mr. Diamant went to an interview room against his will.

24. Once inside the interview room, Mr. Diamant attempted to use his cell phone, but was prohibited by security personnel.

25. After several minutes, a Rhode Island State Police detective, believed to be Lawens Fevrier, entered the room. Mr. Diamant again stated that he did not wish to produce identification and wished to leave the room. Detective Fevrier stated that he was performing an "investigation" and that Mr. Diamant had no choice but to produce identification.

3

26. At some point during the evening, Mr. Diamant observed a letter or document from Foxwoods casinos, advising that the casino had placed limits on the amount of money Mr. Diamant was permitted to bet at Foxwood gaming tables. The document had a picture of Mr. Diamant.

27. Detective Fevrier directed Mr. Diamant to stand, and proceeded to search him. He removed Mr. Diamant's identification and a credit card, and then his wallet. Having noticed that Mr. Diamant was wearing a money belt, the detective asked how much money was inside. He then opened the money belt, claiming that he was searching for "weapons."

28. Detective Fevrier placed a call and provided identifying information about Mr. Diamant to the person taking the call. He also turned over Mr. Diamant's identification to the chief of security, who photocopied Mr. Diamant's information. When Mr. Diamant asked why the information had been provided to the casino when Mr. Diamant had asked for it to be kept private, the detective said it was part of his investigation.

29. Detective Fevrier interrogated Mr. Diamant, asking what he did for a living, where he was staying, what car he was driving, and where he had rented the car. At no time was Mr. Diamant advised of his rights pursuant to Miranda v. Arizona.

30. At the conclusion of the interrogation, Mr. Diamant was ordered to stand against a wall while casino security officials photographed him. He was informed that his photograph would be circulated to other casinos.

31. Mr. Diamant asked for identification from the policemen. A Lincoln police officer provided badge number 39, and detective Fevrier provided his name but no badge number.

32. Mr. Diamant was provided a no trespass/exclusion order from Twin River and directed to sign it, which he did. Only then was he permitted to leave, having been detained for approximately an hour and a half.

33. At no time on July 2 did Mr. Diamant commit a crime. He left the casino with his winnings.

## COUNT ONE: FALSE IMPRISONMENT

34. All previous paragraphs and allegations are incorporated by reference.

35. The defendants, jointly and severally, intended to confine Mr. Diamant against his will, in order to obtain his identification and to investigate him and ban him from Twin River. Mr. Diamant was conscious of the confinement, did not consent to the confinement, and said confinement was not privileged.

4

36. As a direct and proximate result of said confinement, Mr. Diamant has suffered damage including humiliation, emotional distress and other harm, and seeks compensation for same.

37. The defendants' conduct, jointly and severally, was reckless, malicious, and willful, and Mr. Diamant prays for an award of punitive damages.

### COUNT TWO: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

38. All previous paragraphs and allegations are incorporated by reference.

39. The defendants, jointly and severally, engaged in extreme and outrageous conduct by detaining Mr. Diamant without any legal justification or basis, and impliedly used the threat of arrest or physical injury in order to compel him to produce identification against his will.

40. As a direct and proximate result of the defendants' conduct, Mr. Diamant has suffered damage including humiliation, emotional distress and has otherwise suffered harm, and seeks compensation for same.

41. The defendants' conduct, jointly and severally, was reckless, malicious, and willful, and Mr. Diamant prays for an award of punitive damages.

### COUNT THREE: UNREASONABLE SEARCH AND SEIZURE 42. U.S.C. § 1983 (As against law enforcement officers for the Town of Lincoln, the Rhode Island State Police)

42. All previous paragraphs and allegations are incorporated by reference.

43. The defendants, jointly and severally, unlawfully detained, searched and seized Mr. Diamant under color of law, thereby depriving him of his rights under the Fourth Amendment of the United States Constitution.

44. As a direct and proximate result of the defendants' conduct, Mr. Diamant has suffered damage including humiliation, emotional distress and other harm, and seeks compensation for same.

45. The defendants' conduct was reckless, malicious and willful, and Mr. Diamant prays for an award of punitive damages.

### COUNT FOUR: VICARIOUS LIABILITY

46. All previous paragraphs and allegations are incorporated by reference.

5

47. Defendants Town of Lincoln and State of Rhode Island are liable to the plaintiff on a theory of respondeat superior and vicarious liability.

48. Mr. Diamant prays for an award of compensatory and punitive damages.

WHEREFORE, Mr. Diamant prays for judgment in his favor, together with an award of compensatory damages, punitive damages, attorney's fees pursuant to 42 U.S.C. 1983 and 1988, as well as all attorney's fees, interest and costs as this court may deem just and proper.  MR. DIAMANT DEMANDS A TRIAL BY JURY.


_____/S/_____
Thomas G. Briody, Esq. #4427
Law Office of Thomas G. Briody
91 Friendship Street
Providence, RI 02903
Telephone: (401) 751-5151
Facsimile: (401) 421-0876