**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**DAN DIAMANT**

       v.                                       C.A. No. 1:17-cv-00548-JJM-PAS

**UTGR, INC. d/b/a Twin River Casino**
**and John Does, various security personnel**
**Employed by Twin River Casino, as well as**
**Joseph Anterni and Russell Enos, police officers**
**employed by the Town of Lincoln,**
**Rhode Island, and Detective Trooper**
**Lawens Fevrier, Rhode Island State Police**

## UTGR, INC.'S MOTION FOR SUMMARY JUDGMENT AS TO COUNT TWO OF PLAINTIFF'S AMENDED COMPLAINT

### I.   INTRODUCTION

Plaintiff, Dan Diamant ("Plaintiff"), has filed a complaint against UTGR, Inc. ("UTGR"), the Town of Lincoln ("Town") and Rhode Island State Police Trooper Lawens Fevrier ("Fevrier"(, as result of an incident that occurred at Twin River Casino on July 2, 2016. Plaintiff's Complaint alleges two counts against the casino, *i.e.* "False Imprisonment" ("Count One") and "Intentional Infliction of Emotional Distress" ("Count Two"). UTGR now moves for summary judgment with respect to Count Two. Plaintiff's claim that UTGR is liable for intentional infliction of emotional distress fails as a matter of law.  Plaintiff has not adduced evidence by which a jury could find the requisite elements.  In fact, this Court has already granted summary judgment to the co-defendants on Plaintiff's claim of emotional distress based on the lack of evidence of sufficient physical symptomology. As such, UTGR's motion on the same issue should be granted under the **law of the case doctrine**.

## II. FACTS

On the evening of July 2, 2016, Plaintiff was counting cards while playing blackjack at Twin River Casino in Lincoln, Rhode Island. *See* "*Statement of Undisputed Facts in Support of UTGR, Inc.'s Motion for Summary Judgment*," at ¶¶1-2. Accordingly, the gaming floor manager requested that Diamant be ejected. *Id*. ¶3. Security responded and approached Diamant. *Id*. ¶4.

Security notified the on-duty Town of Lincoln Police Detail to respond and witness the ejection, which was consistent with routine procedure. *Id*. ¶5. Lincoln Officers responded within a short time and dealt with Diamant from that point forward. *Id*. ¶6.

Because a gaming issue was involved Security also made sure that Rhode Island State Police, Gaming Enforcement Division was notified. *Id*. ¶7. On July 2, 2016, Corporal Lawens Fevrier, a member of the Rhode Island State Police Gaming Enforcement Unit, received the notice. *Id*. ¶8. Corporal Fevrier was advised that an individual at the casino was believed to be counting cards refused to provide identification and was being ejected as a confirmed advantage player. *Id*. ¶9. He was given the plaintiff's presumed name and date of birth. *Id*. ¶10. Fevrier made the decision to respond to the casino and Lincoln Police Officer Joseph Anterni advised Diamant of that fact. *Id*. ¶11- ¶12. At that point, Diamant was escorted to an interview room to await Fevrier. *Id*. ¶13.

Corporal Fevrier arrived entered the interview room, his badge visible around his neck as he was in plain clothes, introduced himself to Plaintiff as the gaming enforcement detective on duty, and explained to Plaintiff why he was there. *Id*. ¶14. Corporal Fevrier conducted a pat down of Plaintiff. Corporal Fevrier opened the waist wallet and saw identification showing Plaintiff was an Israeli citizen. *Id*. ¶16. Plaintiff was calm during these events. *Id*. ¶17. Plaintiff was then escorted to the casino exit. *Id*. ¶18.

When asked to set forth the basis for his emotional distress claim, Plaintiff answered as follows: "[b]eing intimately searched by the RI State detective, in front of casino personnel, was humiliating and degrading…." *Id*. ¶20.  The Plaintiff admitted during his deposition that he did not have any physical symptomology and stated: "I have no physical injury as a result of this" and that he had "nothing in the way of treatment either psychological or medical as a result of [the] incident…." *Id*. ¶21 . He further testified "I don't have emotional distress today as a result of my experience." *Id*., p. 21.

### III.    ARGUMENT

To succeed on a claim for intentional infliction of emotional distress, a plaintiff must show that: "(1) the conduct must be intentional or in reckless disregard of the probability of causing emotional distress, (2) the conduct must be extreme and outrageous, (3) there must be a causal connection between the wrongful conduct and the emotional distress, and (4) the emotional distress must be severe." *Swerdlick v. Koch*, 721 A.2d 849 864 (R.I. 1998) (adopting the standard set forth in Restatement (Second) of Torts § 46); *see also Champlin v. Washington Trust Co of Westerly,* 478 A.2d 985, 989 (R.I. 1984). The standard for extreme and outrageous conduct is extremely high as the plaintiff must prove that the defendant's conduct was beyond mere intent or even malice. *Swerdlick*, 721 A.2d at 863 ("the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."). Providing context to the first two elements, the Rhode Island Supreme Court has looked to the Restatement, which provides at comment (d):

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive

3

> damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"

*Id*. at 873 (citing Restatement (Second) Torts, § 46 cmt. d) (emphasis added). To demonstrate that the emotional distress is severe – the fourth element – the plaintiff must also set forth sufficient evidence of medically established physical symptomatology. *Swerdlick*, 721 A.2d at 863.

It is beyond dispute that UTGR's conduct towards Plaintiff cannot be described as extreme or outrageous. Security's direct interaction with Plaintiff was only a few minutes. In fact, the Plaintiff has attested that the basis for his alleged emotional distress is action by the State, not UTGR. Specifically, he described the basis of his emotional distress claim as "[b]eing intimately searched by the RI State detective, in front of casino personnel, was humiliating and degrading…." *See* "*Statement of Undisputed Facts in Support of UTGR, Inc.'s Motion for Summary Judgment*" at ¶20. Perhaps more importantly, however, the record is vacant of any evidence of medically established physical symptomology. The Plaintiff admitted during his deposition that he did not have any physical symptomology and stated that "I have no physical injury as a result of this" and that he had "nothing in the way of treatment either psychological or medical as a result of [the] incident…." *Id*., ¶21. He further testified that: "I don't have emotional distress today as a result of my experience." *Id*.

Plaintiff's own testimony makes it unequivocally clear that he did not suffer any physical symptomology and did not suffer severe emotional distress. Thus, Plaintiff's intentional infliction of emotional distress claim against UTGR fails and must be denied and dismissed. In fact, this Court has already granted summary judgment to the co-defendants on Plaintiff's claim of emotion

distress based on the lack of evidence of sufficient physical symptomology. (See Text Order of September 1, 2020). As such, UTGR's motion on the same issue should be granted under the law of the case doctrine, which holds that:

> when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.

*Arizona v. California*, 460 U.S. 605, 618, 103 S. Ct. 1382, 75 L. Ed. 2d 318 (1983). The First Circuit recognizes narrow exceptions to that doctrine, including

> if the initial ruling was made on an inadequate record or was designed to be preliminary; if there has been a material change in controlling law; if there is newly discovered evidence bearing on the question; and if it is appropriate to avoid manifest injustice.

*Naser Jewelers, Inc. v. City of Concord*, 538 F.3d 17, 20 (1st Cir. 2008) (citing *Ellis v. United States*, 313 F.3d 636, 647-48 (1st Cir. 2002)).  However, none of those exceptions applies here. There has been no change in the prevailing law regarding physical symptomatology; the prior summary judgment ruling was not intended to be preliminary; and there has been no discovery since that ruling so as support a "newly discovered evidence" argument.

**WHEREFORE**,     UTGR, Inc. requests that the Court grant this motion and enter an order denying and dismissing Count Two of Plaintiff's Amended Complaint.

          UTGR, Inc.,
          By Its Attorney,

          */s/ Paul R. Crowell*

          Paul R. Crowell, Esq. (#6904)
          Engelberg & Bratcher
          100 High Street, Suite 1450
          Boston, MA  02110
          T:  617-371-4228
          *paul.crowell@zurichna.com*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on November 16, 2020, I electronically filed the herein document via the ECF filing system and that a copy is available for viewing and downloading. I also hereby certify that I caused a copy of the herein document to be served via the ECF system to the registered participants as identified on the Notice of Electronic Filing (NEF)

          */s/* Paul R. Crowell
          Paul R. Crowell, Esq. (6904)