IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF RHODE ISLAND

DAN DIAMANT, Plaintiff

vs.                                                          CA No. 17- cv548 JJM-PAS

UTGR, Inc. dba Twin River Casino, et al.

PRE-TRIAL MEMORANDUM

1. STATEMENT OF FACTS

This case involves the false imprisonment and unlawful search and seizure of the plaintiff, Dan Diamant, on July 2, 2016 at the Twin River Casino. The plaintiff is a citizen of Israel. He plays blackjack, and possesses the ability to keep track of cards being dealt, even when the cards are placed in a "shoe" that holds multiple decks. By tracking cards that have already been played, Mr. Diamant is able to determine when the odds favor him placing a higher bet. This is referred to as advantage playing or "card counting." Card counting is not illegal. However, casinos have the right to exclude or expel advantage players. They do not have the right to detain advantage players, nor do they have the right to force advantage players to produce identification.

On July 2, Mr. Diamant entered the Twin River Casino (UTGR) and played blackjack. After playing for a period of time, he was approached by Twin River Security personnel and asked to leave his place at the blackjack table. Mr. Diamant was surrounded by security officers and informed that he was being

1

ejected from the casino. He was told he would need to accompany security to an interview room, produce identification, and be photographed.

Mr. Diamant said he did not want to leave the public area of the casino, and did not want to produce identification. He simply wanted to leave. He feared violence. A Twin River Security Officer, Captain Kyle, repeatedly told Mr. Diamant that he could not leave, would have to produce identification, and would have to accompany officers to an interview room.

Twin River's ejection policy states that security has no right to summon or force an individual to its security office. If an individual wishes to leave at any time, he may do so. Twin River ignored this policy.

When Mr. Diamant declined to go to the interview room, Twin River security summoned two Lincoln police officers working a "detail" that evening. The officers, Joseph Anterni and Russell Enos, joined the officers surrounding Mr. Diamant. Mr. Diamant again expressed his desire to leave. Anterni and Enos, both in full uniform and armed, assisted Twin River security. When Mr. Diamant asked Anterni would what happen if he tried to leave, Anterni said "I would have to stop you."

Twin River also alerted Rhode Island State Police Corporal Lawens Fevrier that Mr. Diamant was at the casino and refused to produce identification. Fevrier had returned to his home, approximately twenty minutes away. After spending several minutes attempting to identify Mr. Diamant through a state police computer database, Fevrier left his home and drove back to the casino.

Diamant was allowed to cash his chips, but was again told he would have to go to the "Spine," a private area of the casino located on another floor, where an interview room was located. Against his will, and believing he had no choice, Mr. Diamant went to the interview room. Twin River security and Lincoln officers Anterni and Enos went with him. Anterni acknowledged at deposition that both he and Enos remained through Mr. Diamant's detention in order to assist with the "investigation." Anterni also testified that he repeatedly told Mr. Diamant that the entire encounter was being recorded by surveillance video. He used this statement to push Mr. Diamant to go to the Spine. Neither Anterni, Enos nor Corporal Fevrier preserved this video, despite their claims to be assisting with or conducting an "investigation."

When Corporal Fevrier arrived, he informed Mr. Diamant, now in the interview room, that he was "conducting an investigation." Mr. Diamant again asked to leave the casino, and stated that he did not want to produce identification. Corporal Fevrier ordered Mr. Diamant to stand up, and patted him down. He removed Mr. Diamant's identification and gave it to Twin River security. He directed security to photograph Mr. Diamant. Fevrier informed Mr. Diamant that his identification would be circulated to other casinos. When Mr. Diamant asked Fevrier what he was investigating, Fevrier responded that he wanted to make sure Diamant didn't "blow something up." Fevrier also told Mr. Diamant that the seized identification would be circulated to other casinos, making it more difficult for Mr. Diamant to play blackjack in other venues.

The experience left Mr. Diamant shaken. His detention lasted approximately one hour, and he was forced to do something he did not want to do—produce personal identification. He had never been treated in this fashion in any other casino. During the entire process, he feared violence. He contacted Twin River within a few days of his ejection, and asked that all security video of his interaction with security and the police be preserved. Counsel sent a followup letter a few weeks later. Despite this, Twin River failed to preserve the video. Twin River has acknowledged through a request for admissions that it received Mr. Diamant's facsimile request to preserve surveillance video.

There was neither reasonable suspicion nor probable cause to believe that Mr. Diamant was committing a crime. There was no basis for detention, and no legally justifiable reason to search him. Plaintiff believes that Corporal Fevrier's professed reason for patting him down was a pretext to allow him to seize identification and hand it to Twin River.

The conduct of all defendants involves a gross abuse of police power. Twin River used two police agencies to achieve what its own policy was designed to prevent. In essence, it treats state and local police officers as "super security." Lincoln Police officers Anterni and Enos and Trooper Fevrier were happy to comply. The defendants violated Mr. Diamant's civil rights.

Mr. Diamant has sued for false imprisonment, and unreasonable search and seizure in violation of his rights under the Fourth Amendment. He seeks compensation for his humiliation, confinement, and the misuse of his identification by the defendants.

2. **LEGAL ANALYSIS**

The plaintiff has sued the defendants for the intentional tort of false imprisonment, and for violating his civil rights to be free of unreasonable search and seizure under the Fourth Amendment of the United States Constitution. The tort of false imprisonment occurs when a person (or persons) obstructs or deprives another of his freedom to choose his location, however briefly. The plaintiff must show that (1) defendants intend to confine him; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not privileged. Moody v. McElroy, 513 A.2d 5, 7-8 (R.I. 1986). The length of confinement is immaterial. Webbier v. Thoroughbred Racing Protective Bureau, 105 R.I. 605, 613, 254 A.2d 285 (1969). Where a plaintiff submits to confinement out of fear of physical force, the "consent" does not bar a claim for false imprisonment. Id., and Berberian v. Mitchell, 131 R.I. 438, 441, 321 A.2d 431, 432 (1974).

The Fourth Amendment of the United States Constitution provides that the people have a right to be secure in their persons against unreasonable searches and seizures. This provision entitles an individual to "the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." Terry v. Ohio, 392 U.S. 1, 9 (1967). "[T]his inestimable right of personal security belongs as much to the citizen on the streets of our cities as to the homeowner closeted in his study [.]" Id. In order to justify "official intrusion upon the constitutionally protected interest of the private (party)… the police officer must be able to point to specific and

articulable facts which taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry, 392 at 21.  The Fourth Amendment reaches stops and detentions that fall short of an arrest.  United States v. Trullo, 809 F.2d 108, 110 (1st Cir.) cert. denied, 482 U.S. 916 (1987).

It is unlawful for police officers to detain someone for refusing to answer their questions or for challenging them.  Houston v. Hill, 482 451, 461 (1987) ("the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers[.]"), Veiga v. McGee, 26 F.3d 1206, 1213 (1st Cir. 1994).  Stopping an individual for the sole purpose of obtaining identification violates the Fourth Amendment.  Brown v. Texas, 443 U.S. 4, 52 (1979).  In the absence of any basis for suspecting an individual of misconduct, the balance between the public interest and the individual's right to personal security and privacy tilts in favor of freedom from police interference.  Id., at 53.  In sum, police officers cannot detain someone simply because the police do not know who that person is.

3. **EVIDENTIARY ISSUES**

There is a spoliation issue.  Defendants were asked to preserve surveillance video pertaining to Mr. Diamant's claim.  They failed to do so. Defendants have admitted that they received Mr. Diamant's request to preserve surveillance video, a request made less than a week after the incident.  Pursuant to Rhode Island law, plaintiff intends to seek an instruction that the defendant's destruction of this video can be construed to mean that the images contained in the video would have been adverse to the defendants' interests.

4. **LENGTH OF TRIAL**

    Plaintiff anticipates trial to last two to three days.

5. **OTHER MATTERS**

    Plaintiff remains concerned regarding the feasibility of conducting a trial remotely, notwithstanding the availability of Zoom technology.  Plaintiff is a citizen of Israel, and would be offering testimony at a time that is seven hours ahead of the eastern time zone.

    __/S/__ Thomas G. Briody____
Thomas G. Briody, Esq. #4427
Law Office of Thomas G. Briody
128 Dorrance Street
Suite 550
Providence, RI 02903
Telephone: (401) 751-5151
Facsimile: (401) 421-0876

## CERTIFICATION

    The undersigned certifies that a true copy of this settlement statement was served via electronic mail to Paul R. Crowell, Engleberg and Bratcher, 100 High Street, Boston, MA 02110, Brenda Baum, Rhode Island Department of Attorney General, 150 S. Main Street, Providence, RI 02903, and Marc DeSisto, 60 Ship Street, Providence, RI 02903 on this 20th of November, 2020.

    _/s/ Thomas G. Briody__