# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

**DAN DIAMANT**

**v.**                           **C.A. No. 1:17-cv-00548-JJM-PAS**

**UTGR, INC. d/b/a Twin River Casino**
**and John Does, various security personnel**
**Employed by Twin River Casino, as well as**
**Joseph Anterni and Russell Enos, police officers**
**employed by the Town of Lincoln,**
**Rhode Island, and Detective Trooper**
**Lawens Fevrier, Rhode Island State Police**

## UTGR, INC.'S MOTION IN LIMINE TO PRECLUDE TESTIMONY OR ARGUMENT REGARDING ALLEGED DISSEMINATION OF IDENTIFICATION AND/OR FEAR OF LOSS OF INCOME

Plaintiff, Dan Diamant ("Plaintiff"), has filed a complaint against UTGR, Inc. ("UTGR"), the Town of Lincoln ("Town"), Town of Lincoln Police Ooficer Joseph Antenri and Russell Enos, the Rhode Island State Police, and Rhode Island State Police Trooper Lawens Fevrier ("Fevrier"). as result of an incident that occurred at Twin River Casino on July 2, 2016. Plaintiff's Complaint alleges two counts against the casino, *i.e.* "False Imprisonment" ("Count One") and "Intentional Infliction of Emotional Distress" ("Count Two").[1]  In sum, the basis of plaintiff's claim is that he was falsely imprisoned and held against his will in order to force him to produce identification. Diamant alleges that he refused to produce identification because he did not want it disseminated to other casinos.  He was allegedly concerned that this would prevent him from gambling at any such casinos and making money through "card counting." However, he has produced no evidence

---

[1] UTGR has a pending motion for summary judgment as to Count Two based on lack of medical symptomology and law of the case doctrine as this Court previously granted summary judgment to co-defendants on that claims.

that his identification was in fact disseminated to other casinos,[2] that he has been precluded from other casinos because of any alleged dissemination, or that he has lost income as a result.

Accordingly, UTGR hereby moves in limine for an order precluding Plaintiff from introducing testimony or argument that his identification was, in fact disseminated, to other casinos, that he lost income as a result, or that he *feared* a loss of income.

## ANALYSIS AND ARGUMENT

The law in Rhode Island allows plaintiffs to recover "present damages for future apprehended consequences upon a showing that such consequences are reasonably certain to ensue." *Pescatore v. MacIntosh*, 113 R.I. 139, 148 n.5, 319 A.2d 21, 26 n.5 (R.I. 1974). Plaintiff must establish the "nature and extent" of present damages based on "legally competent evidence" and not based on "speculation or conjecture." *White v. Le Clerc*, 444 A.2d 847, 850 (R.I. 1982). "Consequences which are contingent, speculative, or merely possible, are not proper to be considered in ascertaining the damages." *Markham v. Cross Transp.*, 119 R.I. 213, 222, 376 A.2d 1359, 1364 (1977) (quoting *MacGregor v. Rhode Island Co.*, 27 R.I. 85, 87, 60 A. 761, 762 (1905)).

In answers to interrogatories, plaintiff states that "Twin River took my identity and circulated it to other casinos, and has actively interfered with my ability to pursue a hobby and to derive income from that hobby." *Plaintiff, Dan Diamant's Answers to UTGR, Inc.'s First Set of Interrogatories,* at Answer No. 5 (copy submitted herewith as **Exhibit 1**). However, he is unable to identify any specific facilities[3] or the amount of loss allegedly sustained. (*Id*. at Answer Nos. 8-

---

[2] In point of fact, at the time of the incident Twin River did not share any information with outside facilities, but merely *received* information from them.

[3] In point of fact, at the time of the incident Twin River did not share any information with outside facilities, but merely *received* information from them.

10). Furthermore, he has testified that he does not keep track of his annual earnings from gambling, does not file taxes for them and can only estimate that he makes "up to $20,000 a year." Accordingly, one can only speculate as to whether he sustained any loss; and it is impermissible for a jury to base a decision on speculation.

In this case while Mr. Diamant might be able to testify that he did not want to produce his identification because he feared it would be disseminated to other casinos and feared that he would not be able to "gamble" or "play" at other locations, he should be prohibited from offering any testimony to the effect that he feared he would "lose income" from his hobby. Such testimony could mislead a jury into speculating that he did, in fact, lose h income and improperly consider that speculation in assessing damages. Similarly, plaintiff should be precluded from claiming – baselessly – that his identification was, in fact, disseminated to other casinos by Twin River. Again, this is pure speculation on his part and impermissible. For the same reasons, plaintiff and his counsel should be barred from making any argument in opening or closing statements that Diamant's identification was, or could have been, disseminated to other casinos, or that plaintiff feared a loss of income.

**WHEREFORE**, UTGR, Inc. requests that the Court grant this motion and enter an order precluding Plaintiff from introducing testimony or argument that his identification was disseminated to other casinos, that he lost income as a result, or that he *feared* a loss of income.

UTGR, Inc.,
By Its Attorney,

*/s/ Paul R. Crowell*

Paul R. Crowell, Esq. (#6904)
Engelberg & Bratcher
100 High Street, Suite 1450
Boston, MA  02110
T:  617-371-4228
*paul.crowell@zurichna.com*


## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2020, I electronically filed the herein document via the ECF filing system and that a copy is available for viewing and downloading. I also hereby certify that I caused a copy of the herein document to be served via the ECF system to  the registered participants as identified on the Notice of Electronic Filing (NEF)


*/s/* Paul R. Crowell
Paul R. Crowell, Esq. (6904)

# EXHIBIT 1



# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

DAN DIAMANT

      v.                              C.A. No. 1:17-cv-00548-JJM-PAS

UTGR, INC. d/b/a Twin River Casino
and John Does, various security personnel
Employed by twin river Casino, as well as police
Officers employed by the Town Of Lincoln,
Rhode Island, And Detective Trooper
Lawens Fevrier, Rhode Island State Police

## PLAINTIFF, DAN DIAMANT'S, ANSWERS TO UTGR, INC'S FIRST SET OF INTERROGATORIES

Now comes Dan Diamant, plaintiff in the above captioned action, and responds as follows:

**INTERROGATORY NO. 1:** Give a thorough statement, including chronology and timing of events at the Twin River Casino on the date of the alleged Incident, including in your description such details as (but not necessarily limited to):

    a.  when you arrived;
    b.  who, if anyone, you arrived with or met with at the casino;
    c.  everything you did at the casino, and the duration of time spent doing the same; and
    d.  the location, duration and nature of any interactions you had, the persons involved, and a summary of any conversations that you had or overheard during the interactions (including statements made by you).

**ANSWER NO. 1:**

Dan Diamant
Kibbutz Horshim
DN Sharon Tichon
Israel

<span style="background:black">████████████</span>

I entered the casino at about 6:00p.m. in the evening. I bought in for $300 at a blackjack table and began playing. I moved tables a few times, and at about 7:00pm I noticed several people wearing casino security badges moving up to my table. One of them (Chief of Security I believe) asked to have a word with me away from the table and asked me to take my chips with me.

I colored up my chips and went over to him. He told me I needed to show him some ID and to come to the "interview room". I replied that all I wanted to do was to leave the premises. He told me I could not leave, and that I had to show him some ID.

I repeated again and again that all I wanted to do was to leave, only to be told again and again that I could not. There were about 5-10 security guards all around me, blocking my path to any exit. I did not attempt to exit because to do so I would have had to push through them, and I did not want to risk injury or any more complications.

After several minutes, two local uniformed police (Lincoln PD) turned up. I explained to them that I did not want to show any ID, and that I wanted to leave. I asked if I was under arrest or detained. Although the one I spoke with was friendly, I was told that I could not leave and would be stopped if I tried to do so.

I was then told by both the Chief of Security and the policeman that because I did not want to show ID, State Police had been called, and that could all be avoided if I showed them ID and went to the "interview room". I declined.

After several more minutes, the Chief of Security suggested I cash in my chips. I went to the cage accompanied by him and by the policeman and cashed in my chips. We waited for some time longer, at which point the Chief of Security told me I could go. I shook his hand and wished him luck - another security officer accompanied me to the door.

Before we got there, he got a call (ear-phone) – I was escorted back to the Chief of Security who told me the State Police were on their way, and that "they had asked to detain me", and that I had no choice but to go to the interview room. I asked the policeman to come with me as well, and he said he would although he assured me everything would be recorded and taped in the room. Accompanied by the security guards and the policemen I went to the interview room. I attempted to use my phone but the security Chief ordered me not to use it, saying I was not allowed to do so.

At this point someone brought in a letter from Foxwoods about me, saying they had limited my bets as I was a card counter, together with a picture (sent over from Foxwoods).

Ten minutes later, a detective from Rhode Island State Police showed up. I told him that all I wanted was to leave the premises, and I did not want to give up any ID. His answer was that he was performing an investigation, and that I had no choice.

He had me stand up and searched me. He began by taking my ID and credit card out of my pocket, then my wallet. He also took note of my money belt. After asking how much was in there he opened it and took out the cash "to search for weapons".

He then took down my details and called in (I don't know who he called) to run my name with the DMV. Next, he handed the Chief of Security my ID, who promptly photocopied it. I asked the detective why he had taken my ID, which I had told him I wished to be kept private and given it to the casino. He replied "this is part of my investigation".

I asked what he was investigating, whether I had been accused of any crime and was I under arrest. He replied that he had to investigate me "because I might go and blow something up".

He then told me to stand up, step back against the wall, and asked the Chief of Security to have surveillance take a picture (which the Chief did). The detective then said, "Now your picture will be sent to all the casinos".

I was then asked more questions: Where I was staying; How long had I been staying there: What car I was driving; Where I had rented it; and What I did for a living. I was told I was being barred from the premises, and that I would be arrested if I returned.

When this was done, the Chief of Security gave me an "exclusion form" to sign, which I did, and told me I could go.

I asked both the policeman and the detective for their details. The policeman gave me his badge number, the detective gave me his name but refused to give his badge number.

**INTERROGATORY NO. 2:** Please state whether you used any method of counting cards or particular card playing strategy while at the Casino on the date of the Incident and, if so, describe the method and/or strategy used and any assistive devices used.

**ANSWER NO. 2:**

Objection as to the meaning or definition of the term "counting cards". Without waiving this objection, while playing at Twin Rivers I tried to keep track of high and low cards (high being 10, J, Q, K, A, low being 2,3,4,5,6), varying my bets based on the ratio of high to low cards remaining. I also made adjustments to my playing strategy – if I thought there were many high cards left, for example, I would not ask for a hit and vice versa.

All of this was done in my head. I used no aids or devices whatsoever.

**INTERROGATORY NO. 3:** Please state whether you have ever employed any method of counting cards while at any casino or gaming facility within the past five years and if, so, identify the facility, the date(s) thereof, and the method used and any assistive devices used.

**ANSWER NO. 3:**

Objection as to the meaning or definition of the term "counting cards". Without waiving this objection, I have played at various casinos when traveling, using the same methods (attempting to keep track of high and low cards in my head). I do not keep exact records of every single casino I have ever played in.

I have never used any assistive devices or aids.

**INTERROGATORY NO. 4:** Please state whether you have ever been asked to leave, been prohibited from entering, subjected to play or betting limitations, or subjected to any other

warning or sanction by a casino or gaming facility at any time from July 1, 2011 to the present and if, so, state:

      a.  the facility;
      b.  the date(s) the sanction(s) were imposed;
      c.  the nature of the sanction(s); and
      d.  the reason(s) given for the sanction(s).

**ANSWER NO. 4:**

While playing blackjack in Foxwoods Casino during the week the incident at Twin Rivers took place, I was approached by a casino employee wearing a suit, who addressed my by name and told me I was welcome to continue playing at Foxwoods, but when playing blackjack, I would only be allowed to bet the minimum table bet. I was given no reason for this.

In April of 2018 I was asked not to play any Blackjack games at the Chumash casino in Santa Ynez, California.

This has happened occasionally. I have been asked not to play blackjack and/or not to return a few times in Europe, a couple of times in Canada. These incidents were polite and low-key, not memorable. When they happened, casino staff either gave no reason, or said something along the lines of "you're too good for us". I simply left and did not return.

I do remember the names of casinos of a couple of casinos where this happened - the Great Northern casino in Alberta, Canada about three or four years ago, and the Merit Casino in Northern Cyprus about four or five years ago.

**INTERROGATORY NO. 5:** Please describe in detail any injuries you claim to have suffered as a result of the alleged incident, including, in your description of each such injury:

      a. all symptoms of the injuries;
      b. the nature and length of any temporary disability;
      c. the nature and extent of any alleged permanent disability; and
      d. whether you contend such injury is permanent.

**ANSWER NO. 5:**

I was detained against my will. I was searched without probable cause. I was forced to be photographed, and I believe my name and personal information has been circulated to casinos without my consent or approval. The experience has left me shaken and apprehensive. Twin River took my identity and circulated it to other casinos, and has actively interfered with my ability to pursue a hobby and to derive income from that hobby. The defendants collectively violated my right to be free from an unreasonable search and seizure in violation of the Fourth and 14th amendments to the United States Constitution.



**INTERROGATORY NO. 6:** For each injury you claim you received as a result of the accident, describe any treatment received and/or anticipated, including in your description:

   a. the name and address of each physician, hospital or other health care provider;
   b. the number of treatments;
   c. the date of each and every treatment;
   d. the nature of each and every treatment received; and
   e. the nature of any future treatments and/or medications that have been recommended, including the name, address, and title of the person recommending such treatments.

**ANSWER NO. 6:**

See answer to No. 5.


**INTERROGATORY NO. 7:** If you have ever – either prior or subsequent to the date of the alleged incident – experienced any similar injury, illness, disease or infirmity as what you claim resulted from the Incident, state:

   a. the cause of the injury or symptoms;
   b. date and duration of the injury or symptoms;
   c. cause of the injury or symptoms; and
   d. the treatment you received for the injury or symptoms, including the name of the person or institution that provided the treatment.

**ANSWER NO. 7:**

N/A

**INTERROGATORY NO. 8:** Please *itemize* any monetary expenses incurred by you, or on your behalf, as a result of the alleged Incident, specifying, as to each:

   a. to or for whom the payment was made or is due;
   b. the amount of the payment or expense incurred;
   c. the purpose of the payment or expense.

**ANSWER NO. 8:**

I have had my identity seized by the state police, and that identity was shared with Twin River and evidently with other casinos. By doing this, I have been deprived of the opportunity to play blackjack at other casinos, and believe that this deprivation will deny me income.

**INTERROGATORY NO. 9:** If you claim lost wages or loss of earning capacity as a result of the Incident described in the complaint please describe such loss, including in your description:

a. the inclusive dates during which you claim lost earnings and/or your earning capacity was diminished;

b. an itemization of your lost earnings and/or earning capacity, and the method you used to calculate the same; and

c. each and every fact upon which you rely in establishing the length and amount of your diminished earnings and/or earning capacity.

**ANSWER NO. 9:**

See answer 8.

**INTERROGATORY NO. 10:** If you are claiming lost wages, loss of earning capacity, and or disability of any kind, please state each and every job (including self-employment) you have had in the period from five (5) years preceding your injuries to the present, stating as to each such job:

a. the dates of your employment;

b. the name and address of your employer and direct supervisor;

c. your job title;

d. your hourly, weekly or monthly rate of compensation;

e. the average number of hours per week you worked; and

f. your reason for leaving each job you no longer hold.

**ANSWER NO. 10:**

See answer 8.

**INTERROGATORY NO. 11:** List the name, address and telephone number of each person you believe possesses information about the allegations in the Complaint or the incident(s) alleged therein, providing a brief synopsis as to what information you believe that person possesses, and how you believe they acquired that knowledge.

**ANSWER NO. 11:**

Objection, in that this calls for privileged communication with legal counsel and spousal communication. Without waiving this objection, I spoke about my experience with:

1. Al Rogers – email : al@bj21.com and
2. Dan Bar-O, a friend in Israel.

Al Rogers may be a pseudonym. I have no other contact information for him. He is someone I contacted online for advice about finding a lawyer. My discussions with both these men were solely about my personal experiences.

**INTERROGATORY NO. 12:** State whether you or your attorneys have obtained a statement (including, but not limited to, any oral or recorded conversations) relating to the Incident alleged in the complaint from any person, and, if so, for each statement that you have obtained state:

a. the name and present address of the person who gave the statement;



b.  the name and address of each person present at the time the statement was made;

c.  what date the statement was obtained;

d.  whether the statement was oral, in writing, or otherwise recorded;

e.  if oral, a detailed summary of the content of the statement; and

f.  if written or recorded, the statement's or recording's present location (or attach a copy of the document to your answers to these interrogatories).

**ANSWER NO. 12:**

Objection, based on work product.  Without waiving this objection, none at this time.

**INTERROGATORY NO. 13:**  If you participated in or overheard any conversations with the defendant, its agents, or its employees concerning any matter related to the Incident or injuries you allege that you suffered, or the acts or omissions that you claim caused your injuries, for each conversation, please state:

a.  the names, addresses and descriptions of the persons involved in the conversation;

b.  what was said by each person, to the best of your memory; and

c.  the date, time and location of the conversation.

**ANSWER NO. 13:**

None at this time.  Twin Rivers' failure to preserve audio and video of my detention has deprived me of the ability to learn of such conversations.

**INTERROGATORY NO. 14:**  Identify and describe any and all investigation(s) conducted into the events alleged in the Complaint including in your description:

a.  a what the investigation involved;

b.  the date(s) thereof;

c.  who conducted the investigation(s);

d.  whether any written reports, conclusions, recommendations or findings were made as a result of the investigations;

e.  the name address and person with custody of such records; and

f.  The name and address of all persons who have received copies of such records.

**ANSWER NO. 14:**

Objection as to work product or privileged communications.  Without waiving this objection, none at this time.

**INTERROGATORY NO. 15:** Identify any and all reports, complaints, notices, or other communications -- whether oral or in writing -- made and/or filed with any governmental agency or insurance company(ies) regarding the Incident and, for each, state:

    a. the name of the person making the report, complaint, notice or communication;
    b. the date of thereof;
    c. the parties to the communication (*i.e.* recipient and sender);
    d. the subject and summary of the communication;
    e. the reason for the communication; and
    f. any action taken as a result.

**ANSWER NO. 15:**

See letter from counsel to the Town of Lincoln, placing the Town on notice of claim dated December 1, 2017. See also my facsimile submitted to Twin River, and my attorney's correspondence to Twin River.

**INTERROGATORY NO. 16:** Identify any and all other documents -- including, but not limited to, photographs or other pictorial or video representations -- relevant to the Incident, any injuries or damages claimed, or any person's or entity's liability thereof, including as part of your identification:

    a. the name and present address of the person who created the document;
    b. what date the document was created;
    c. the present location of the document (or attach a copy of the document to your answers to these interrogatories);
    d. a description of the subject and nature of the document and
    e. if you claim the document is privileged, any and all persons to whom the document was shown or disseminated.

**ANSWER NO. 16:**

I have no other documents.

**INTERROGATORY NO. 17:** For each individual you expect to call as an expert witness at trial, whom you reserve the right to call as an expert (including medical providers), or whose opinions you intend to present as expert evidence, please state:

    a. the name, address and title of the witness;
    b. the subject matter on which the expert is expected to testify or opine;
    c. the substance of the facts and opinions to which the expert is expected to testify;
    d. a summary of the grounds for each opinion;
    e. all treatises, texts or articles relied upon by each expert in forming each such opinion; and

     f.   all tests, inspections, studies, calculations or experiments relied upon by each expert in forming each such opinion.

**ANSWER NO. 17:**

No expert witness has been determined.

**INTERROGATORY NO. 18:** If you, or of to your knowledge any of parties, witnesses (including expert witnesses), or persons identified in your responses to interrogatories, or in any other party's responses to interrogatories, has or have ever been convicted or pleaded guilty, no contest, or *nolo contendre* to any criminal offense, give the date of each such plea or conviction, the name and address of each court or other tribunal (including military) before which such matter was heard, and give the final disposition/sentence of any and all such cases.

**ANSWER NO. 18:**

I did get fined a couple of times for some traffic violations in Israel (which automatically go to court). The fines were for a speeding and a red light. Other than these traffic violations, I have never been accused of or convicted of any criminal offense.

**INTERROGATORY NO. 19:** State whether you have ever been a party to any civil lawsuit, administrative claim, traffic tribunal claims, or other legal proceeding, including claims for workmen's compensation, other than the present lawsuit, and, if so, for each lawsuit or action, state:

     a.   the date on which such proceeding was commenced;
     b.   the court, title, and docket number of any such proceeding;
     c.   the nature of the claims involved;
     d.   the injuries or damages you claimed (if any); and
     e.   the present status or resolution of each claim.

**ANSWER NO. 19:**

I have never been party to a civil lawsuit.

**INTERROGATORY NO. 20:** Identify any and all communications you have had, or which anyone acting on your behalf has had, with any other party to this litigation (or anyone acting on their behalf) relating to the prosecution or defense of this Litigation or the collection of damages, including, but not limited to:

     (a)  releases;
     (b)  covenants, agreements, or promises to cooperate; and/or
     (c)  agreements or promises not to pursue, prosecute or collect.

**ANSWER NO. 20:**

See my response to Interrogatory No. 13. In addition, I faxed a request to Twin River asking them to preserve any surveillance video of my detention. My attorney also wrote to Twin River making a similar request.

_____

Dan Diamant

    Subscribed and sworn to before me on this __3__ day of _July_ , 2018, under penalty of perjury.

Notary

My commission expires:

_____

### CERTIFICATE OF SERVICE

    I hereby certify that on the _19th_ day of _Sept_ , 2018, a copy of the within Answers to Interrogatories was mailed to the following counsel of record:

Paul S. Crowell, Esq.
Engleberg and Bratcher
100 High Street
Suite 1450
Boston, MA  02110

Kate C. Brody, Esq.
Susan E. Urso, Esq.
R.I. Department of Attorney General
150 South Main Street
Providence, RI  02903

Marc DeSisto, Esq.
DeSisto Law LLC
60 Ship Street
Providence, RI 02903

# AUTHENTICATION OF SIGNATURE

I the undersigned, Gur Kazir Notary at 6th Katzenelson, Lod, hereby certify that on 3.7.18 there appeared before me:

Mr. DAN DIAMANT, whose identity was proved to me by Israeli Passport No. 39007153 issued by The State of Israel at Ministry of Interior in Jerusalem on December 29th 2016

And signed of his own free will the attached document marked 'A-א'.

In witness whereof i hereby authenticate the signature of Mr. DAN DIAMANT by my own signature and seal this 3.7.18

Notary fee in the sum of 192 ₪ (inc. V.A.T) paid.

# אימות חתימה

אני החח"מ גור קציר נוטריון ברח' כצנלסון 6, לוד אשר כי ביום 3.7.18 ניצבה לפני ה"ית:

מר דן דיאמנט שזהותו הוכחה לי על פי דרכון ישראלי מספר 39007153 שהוצא ע"י משרד הפנים בירושלים ביום 29.12.2016.

וחתם מרצונו החופשי על המסמך שלעיל המצורף והמסומן באות א'-A.

ולראיה הנני מאמת את חתימתו של דן ריאמנט בחתימת ידי וביחותמי, היום 3.7.18

שכר בסך 192 ₪ (כולל מע"מ) שולם.



