# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

**DAN DIAMANT**

      v.                                         C.A. No. 1:17-cv-00548-JJM-PAS

**UTGR, INC. d/b/a Twin River Casino
and John Does, various security personnel
Employed by Twin River Casino, as well as
Joseph Anterni and Russell Enos, police officers
employed by the Town of Lincoln,
Rhode Island, and Detective Trooper
Lawens Fevrier, Rhode Island State Police**

## UTGR, INC.'S MOTION FOR JURY TRIAL IN-PERSON

Plaintiff, Dan Diamant ("Plaintiff"), has filed a complaint against UTGR, Inc. ("UTGR"), the Town of Lincoln ("Town"), Town of Lincoln Police Officer Joseph Antenri and Russell Enos, the Rhode Island State Police, and Rhode Island State Police Trooper Lawens Fevrier ("Fevrier"). as result of an incident that occurred at Twin River Casino on July 2, 2016. In sum, the basis of plaintiff's claim is that he was falsely imprisoned and held against his will in order to force him to produce identification. Plaintiff's claim against UTGR (False imprisonment) is one that could include punitive damages. As such witness assessment is of particular importance.

At the Court's calendar call on November 12, 2020 participants were informed that the Court is conducting jury trials only by Zoom, with all witnesses and jurors presumably appearing in their own chosen locations. UTGR hereby objects to that procedure and requests that the Court proceed in person and continue the trial if necessary.

UTGR submits that the constitutional right to an in-person jury trial is especially implicated in this case, where plaintiff is claiming emotional distress and punitive damages. Assessment of emotional distress requires that a jury have a full ability to assess plaintiff's demeanor and

emotional state when recounting events. Similarly, assessment of punitive damages requires that a jury be able to assess the defendants' demeanor and credibility in making assessments regarding state of mind and alleged malice. Conversely, there does not appear to be a significantly compelling reason why an in-person jury trial cannot wait, when such trial can be held in the near future. Plaintiff Diamant is a healthy individual and, at the November 12, 2020 calendar conference, his counsel advised that Diamant had intended to appear in person for a January trial. All other witnesses are local and would be able to appear in person if needed.

## ARGUMENT

**(a) The Right to a Jury Trial Is Embedded in the Constitution and the Right of Confrontation Demands an In-Person Trial Absent Exceptionally Compelling Circumstances.**

William Blackstone commented upon the fundamental right of a trial by jury as follows:

> [T]he trial by jury ever has been, and I trust ever will be looked upon as the glory of the English law . . . . It is the most transcendent privilege which any subject can enjoy, or wish for, that he cannot be affected either in his property, his liberty, or his person, but by the unanimous consent of twelve of his neighbours and equals.

3 William Blackstone, COMMENTARIES *379, quoted in, *Reid v. Covert*, 354 U.S. 1, 9-10, 77 S. Ct. 1222, 1 L. Ed. 2d 1148 (1956). "The right of trial by jury in civil cases at common law is fundamental to our history and jurisprudence." *Parklane Hosiery v. Shore*, 439 U.S. 322, 99 S. Ct. 645, 58 L. Ed. 2d 552 (1979) (Rehnquist, J., dissenting). Confrontation, in the form of cross-examination and impeachment, is so central to trial practice that in federal courts, a defendant's right to jury trial in civil actions is constitutionally guaranteed. U.S. CONST. AMEND. VII.[1]

---

[1] In fact, confrontation is so fundamental component of procedural and substantive due process that there is support for the proposition that it is incorporated with respect to state actions. *Cf. McDonald v. Chicago*, 130 S. Ct. 3020, 3035, n. 13 (2010) ("Our governing decisions regarding the ... Seventh Amendment's civil jury trial requirement long predate the era of selective

Constitutional and statutory claims for compensatory and punitive damages fall under the Seventh Amendment's umbrella. *Curtis v. Loether*, 415 U.S. 189, 194-95, 94 S. Ct. 1005, 39 L. Ed. 2d 260 (1974)

The right of confrontation is critical "where the evidence consists of the testimony of individuals whose memory might be faulty or who, in fact, might be perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealousy." *Greene v. McElroy*, 360 U.S. 474, 496 (1959).[2] The Honorable U.S. Supreme Court Justice Black wrote of this right that:

> The right to confront, cross-examine and impeach adverse witnesses is one of the most fundamental rights sought to be preserved by the Seventh Amendment provision for jury trials in civil cases….. "It is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised." *Poller v. Columbia Broadcasting*, 368 U.S. 464, 473 (1962).

*Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 176, 90 S. Ct. 1598, 1618 (1970) (Black, J., concurring).

A key component of testimony for a finder of fact is being able to perceive witnesses, their demeanor and nonverbal cues, behaviors, and reactions upon being asked questions. This is not easily accomplished via videoconferencing – and, if it is, only to a very diminished degree. The Sixth Circuit has written that with videoconferencing "[t]he immediacy of a living person is lost. In the most important affairs of life, people approach each other in person, and television is no substitute for direct personal contact." *Stoner v. Sowders*, 997 F.2d 209, 213 (6th Cir. 1993). The Fourth Circuit has remarked, in reference to video conferencing, that "watching an event on the screen remains less than the complete equivalent of actually attending it." *United States v.*

---

incorporation). *See also Gonzalez-Oyarzun v. Caribbean City Builders, Inc.*, 27 F. Supp. 3d 265, 280 (D.P.R. 2014)

[2] UTGR submits that greed and monetary gain can be added to that list.

*Lawrence*, 248 F.3d 300, 304 (4th Cir. 2001). The Court also noted – in respect to a question as to whether a defendant was permitted to attend his trial – that the "right to be present at trial best ensures the right to consult with counsel and to confront adverse witnesses." *Id*. Similarly, the right to have a in-person trial in a civil case sacrifices no small amount of the right to consult with counsel and confront adverse witnesses.

In regard to the right to confront adverse witnesses, the late Justice Scalia noted the importance of in-person confrontation in influencing honesty. He stated:

> [t]he perception that confrontation is essential to fairness has persisted over the centuries because there is much truth to it. A witness may feel quite differently when he has to repeat his story looking at the man whom he will harm greatly by distorting or mistaking the facts. He can now understand what sort of human being that man is.

*Coy v. Iowa*, 487 U.S. 1012, 1019 (1988) (quoting Zechariah Chafee, Jr., The Blessings of Liberty 35 (1956)).

Likely because the right to confrontation is best served via in-person trial, the right is recognized by Rules 77 and 43 of the Federal Rules of Civil Procedure. Rule 77 requires that "Every trial on the merits must be conducted in open court and, so far as convenient, in a regular courtroom." FED RULES CIV. PROC. R. 77(a). Rule 43 states that:

> At trial, the witnesses' testimony must be taken in open court unless a federal statute, the Federal Rules of Evidence, these rules, or other rules adopted by the Supreme Court provide otherwise. For good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony <u>in open court</u> by contemporaneous transmission from a different location.

FED RULES CIV. PROC. R. 43. The Advisory Committee Notes to this rule recognize the shortcomings of contemporaneous transmission and emphasize the importance of presenting live testimony in court.[3]

---

[3] The Advisory Committee Notes to the 1996 amendment to Federal Rule of Civil Procedure 43 state in part:

4

While remote live testimony has been allowed at times, the question is generally limited to presenting a single or perhaps a few witnesses – not an <u>entire</u> <u>trial</u> – and there have been very important concerns to justify allowing a witness to appear remotely. *See*, *e.g.*, *Maryland v. Craig*, 497 U.S. 836, 857 (1990) (permitting one-way video testimony of a child victim in a sex case); *Horn v. Quarterman*, 508 F.3d 306, 317 (5th Cir. 2007) (upholding use of two-way closed-circuit television for testimony of terminally ill witness). However, it is a much different matter to approach an entire trial wholly online. One Court has noted the problem thusly:

> video-technology has been helpful…. during the pandemic. This court has used ZOOM for certain uncontested hearings. In a jury trial, however, having a witness potentially testify by video presents confrontation clause issues under the sixth amendment. There are only very limited and narrow exceptions to the direct right of confrontation. *Maryland v. Craig*, 497 U.S. 836, 844, 110 S. Ct. 3157, 111 L. Ed. 2d 666 (1990).

*Commonwealth v. Clark*, 2020 Va. Cir. LEXIS 58, at *12 (Va. Cir. Ct. Apr. 27, 2020). By now, it should be relatively indisputable that staring at a screen of faces for eight hours a day is not a feasible way to digest information that will be critical in resolving the disputes at issue in a trial.

While there may be greater room for leeway in a bench trial, remote *jury* trials should proceed over objection only in exceedingly rare and exception cases, which this case does not present. In the case at hand there do not appear to be significantly compelling reason as to why the case cannot be put over for an in-person jury trial which we believe will occur in the not to distant future. Mr. Diamant appears to be a healthy individual and, at the November 12, 2020, conference, his counsel advised that Diamant had intended to appear in person for a January trial.

---

4 Contemporaneous transmission of testimony from a different location is permitted only on showing good cause in compelling circumstances. The importance of presenting live testimony in court cannot be forgotten. The very ceremony of trial and the presence of the factfinder may exert a powerful force for truth telling. The opportunity to judge the demeanor of a witness face-to-face is accorded great value in our tradition. Transmission cannot be justified merely by showing that it is inconvenient for the witness to attend the trial.

This Court's requirement that the parties proceed via Zoom has come with no guidance or information as to what particular details, safeguards or protocols might be applied, but UTGR posits the following grave concerns:

- **Juror Evaluation of Witness Demeanor**. Jurors may not be able to see a witness's demeanor such as shaky hands or fidgeting. This can work both ways, as body language may support credibility or lack thereof. In a Zoom trial, a witness who might appear credible in person could appear flat and detached.

   These concerns are supported by studies of remote witness testimony. In one study,[4] live witnesses were viewed as more honest than video witnesses. Another study[5] on children who testified over a closed-circuit video feed, found children who testified remotely were seen as less credible and viewers were less likely to sympathize with the child. Even the camera angle and range of the camera were found to influence perception. For example, the use of a "long shot" away from a witness made the witness seem more relaxed and natural.

- **Protecting the Integrity of Testimony**. In trials/evidentiary hearings the Court will usually sequester third-party witnesses in the hallway outside the courtroom. With YouTube access and Zoom, sequestration is much harder – if not impossible – to enforce. Additionally, video trials inherently pose a risk of corruption via off-camera activity, notes, or interference.

- **Illegal Recordings**. Presumably there will be public access to a "virtual" trial. YouTube is supposed to display a warning that the court hearings are not allowed to be recorded by the public and only courts are able to use the record feature on Zoom. However, realistically, courts have no way of knowing if third parties have illegally recorded the hearing on their cell phones or other external device.

- **Disclosure of Confidential Information**. If documents are being introduced into evidence through Zoom's share screen feature, these will also be visible on YouTube and would therefore expose the threat of disclosing sensitive information such as account numbers and birth dates.

- **Juror Selection and Diversity:** Unfortunately access to internet and other necessary technology remains inconsistent at best. Various courts face unequal access to resources, including technology. Data shows that 10% of Americans do not use the internet.[6] A significant portion of our communities either do not have regular access to

---

[4] https://onlinelibrary.wiley.com/doi/abs/10.1002/acp.1131

[5] https://www.tandfonline.com/doi/abs/10.1080/10683160701580107?src=recsys&journalCode=gpcl20&

[6] Monica Anderson et al., 10% of Americans Don't Use the Internet. Who Are They?, Pew Research Center – Fact Tank (April 22, 2019), https://www.pewresearch.org/fact-tank/2019/04/22/some-americans-dont-use-the-internet-who-are-they/

the internet or do not have reliable access to the internet. This fact of life will systematically preclude a segment of society from participating and will skew the jury pool.

- **Juror Participation:** It has not been disclosed to the parties how the Court intends to secure stable internet access to all witnesses and jurors. How would the courts guarantee the same internet capability for each juror throughout the duration of the trial? How can the court ensure that all jurors have a quiet, distraction-free place to view the proceedings – and remain attentive to the trial ?

  User error in remote jury trials would present additional challenges. An untimely muted (or unmuted) microphone, bad lighting, or poor choice of background would affect both the quality of the presentation and the listener experience. Other issues with technology such as delay in audio or video feed would also detract from the jurors' ability to assess the evidence in a case.

  The traditional courtroom setting eliminates a number of these issues. The decorum created by being in person in a formal setting adds a measure of seriousness to the proceedings. Everyone is placed against the neutral backdrop of the courtroom, given the same view of the witness and evidence, and presented with the same opportunity to hear witnesses and advocates. This type of environment simply cannot be replicated virtually.

**(b) This Case Does Not Present A Significantly Compelling Need To Sacrifice An In-Person Jury Trial.**

This case does not present a significantly compelling need to sacrifice the parties' Constitutional right to an in-person jury trial cannot wait. The case involves one where plaintiff is claiming emotion distress. Because plaintiff is making such a claim there is heightened need for a jury to be able to observe his demeanor, emotional state when recounting events, and credibility in person. The ability for a jury to do so is severely hampered when he will be presented via a television. Concomitantly, Diamant is making a claim for punitive damages, which requires a jury determination of the defendants' state of mind and alleged malice. The defendants' ability to convey their own credibility and lack of malice is hampered where they are handicapped by the filter of television relay. Furthermore, Plaintiff Diamant is a healthy individual and, at the

7

November 12, 2020 calendar conference, his counsel advised that Diamant had intended to appear in person for a January trial. All other witnesses are local and would be able to appear.

While UTGR is mindful of juror health in regard to Covid-19, other court systems have contemplated and apparently begun retrofitting courtrooms to address this concern (as, for example, by plexiglass shields and social distancing).[7] In fact, a comprehensive report on conducting federal jury trials was published in June 2020 and written by a group of federal trial judges, court executives, and representatives from the federal defender community and the Department of Justice as part of the work of the COVID-19 Judiciary Task Force.[8] It outlines a number of considerations and provides recommendations for minimizing health risks for in-person jury trials.[9] Even if these measures have been contemplated and deemed unfeasible in this district (which UTGR does not know to be the case) it appears that there are now two viable vaccines on the imminent horizon. The CDC has stated a goal of delivering initial doses of a vaccine by January 2021 and that adults should be able to get vaccinated in 2021.[10]

## CONCLUSION

For the foregoing reasons, it is submitted that this case presents a heightened need for an in-person trial whereby a jury can fully assess witness demeanor and credibility. Given the likelihood that an in-person trial for this matter will likely be possible in the near future and that

---

[7] *https://www.uscourts.gov/news/2020/08/27/federal-judges-reinventing-jury-trial-during-pandemic* (last checked Nov. 19, 2020).

[8] *https://www.uscourts.gov/news/2020/06/10/judiciary-issues-report-restarting-jury-trials* (last checked Nov. 19, 2020).

[9] *https://www.uscourts.gov/sites/default/files/combined_jury_trial_post_covid_doc_6.10.20.pdf* (last checked Nov. 19, 2020).

[10] *htttps://www.hhs.gov/coronavirus/explaining-operation-warp-speed/index.html* (last checked Nov. 19, 2020); *https://www.cdc.gov/coronavirus/2019-ncov/vaccines/faq.html* (last checked Nov. 19, 2020).

there have been no concerns raised with specific witness vulnerability, this case does not present compelling reasons to proceed with a completely "remote" trial.

**WHEREFORE,** UTGR hereby requests that the Court proceed in person, continuing the trial if necessary to do so.

UTGR, Inc.,
By Its Attorney,

*/s/ Paul R. Crowell*

Paul R. Crowell, Esq. (#6904)
Engelberg & Bratcher
100 High Street, Suite 1450
Boston, MA 02110
T: 617-371-4228
*paul.crowell@zurichna.com*

### CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2020, I electronically filed the herein document via the ECF filing system and that a copy is available for viewing and downloading. I also hereby certify that I caused a copy of the herein document to be served via the ECF system to the registered participants as identified on the Notice of Electronic Filing (NEF)

*/s/* Paul R. Crowell
Paul R. Crowell, Esq. (6904)